IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Branch Banking and Trust Company ("BB&T") states the following for its Complaint against Defendant Maxim Integrated Products, Inc. ("Maxim").

## NATURE OF ACTION

1. This is an action for declaratory judgment seeking declarations of noninfringement and invalidity under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

2. Plaintiff Branch Banking and Trust Company is a state-chartered bank organized and existing under the laws of North Carolina, having its principal place of business in Winston-Salem, North Carolina.

3. Upon information and belief, Defendant Maxim Integrated Products, Inc. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 120 San Gabriel Drive, Sunnyvale, California.

## JURISDICTION AND VENUE

4. These declaratory judgment claims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). An actual, substantial, and continuing justiciable controversy exists between BB&T and Maxim, requiring a declaration by this Court resolving the legal rights of the parties.

5. This Court has personal jurisdiction over Maxim because Maxim has purposefully availed itself of the privilege of doing business in this Judicial District and has sufficient minimum contacts with North Carolina to render the exercise of jurisdiction over Maxim compatible with due process. Maxim, directly and/or through its distribution networks, offers for sale, sells, and/or distributes products within North Carolina, including in this Judicial District.

6. Upon information and belief, Maxim maintains sales offices in North Carolina. *See* http://www.maxim-ic.com/sales/offices/worldwide.mvp. A true and accurate copy of Maxim's web site showing a sales office in North Carolina is attached hereto as Exhibit A.

7. Upon information and belief, Maxim engages distributors in North Carolina, including in this Judicial District.
*See* http://www.maxim-ic.com/sales/offices/distributor/franchise.mvp. A true and accurate copy of Maxim's web site showing three distributors for North Carolina, including Avnet in Raleigh, North Carolina, is attached hereto at Exhibit B.

8. Upon information and belief, Maxim maintains an interactive website that allows persons within North Carolina to obtain quotes, order and receive products in North Carolina, including in this Judicial District. This website also provides a downloadable "New Order Form" that allows persons within North Carolina to submit orders by e-mail or fax for shipment

of Maxim products to North Carolina. *See* http://www.maxim-ic.com/sales. A true and accurate copy of Maxim's web site reflecting its New Order Form is attached hereto as Exhibit C.

9. Maxim alleges that it sent letters to BB&T's Chief Executive Officer, Mr. Kelly King, beginning on December 22, 2011, alleging patent infringement and seeking royalty payments with respect to BB&T's mobile banking platform, which BB&T operates from offices in North Carolina, including offices located in Raleigh.

10. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and/or (c), and 28 U.S.C. § 1400(b), because Maxim is subject to personal jurisdiction in this District at least because it regularly conducts business and has substantial contacts with the State of North Carolina and within this District.

## FACTUAL BACKGROUND

11. Plaintiff BB&T is a state-chartered bank organized and existing under the laws of North Carolina, with headquarters in Winston-Salem, North Carolina, and is the principal bank subsidiary of BB&T Corporation, also headquartered in Winston-Salem, North Carolina. BB&T has offices throughout North Carolina, including in Raleigh, North Carolina, and offers banking and financial services through approximately 1,800 financial centers in the United States.

12. BB&T makes available to its customers "BB&T Mobile Banking," which allows access to banking services from a smartphone or mobile device, and includes a downloadable application for performing banking transactions using certain types of smartphones and mobile devices.

13. On or about December 22, 2011, Maxim allegedly sent a demand letter to BB&T asserting that BB&T has infringed multiple patents that Maxim asserts it owns. Specifically, the letter stated: "It is our belief that BB&T Bank is infringing a number of the patents within the

Maxim Mobile Transaction Patent Portfolio." The letter also stated that "BB&T Bank mobile platforms . . . infringe certain claims within the portfolio via direct infringement, joint infringement, contributory infringement and/or inducement."

14. Maxim's December 22, 2011 letter enclosed two attachments, one entitled "REPRESENTATIVE CLAIM CHARTS FOR BB&T MOBILE BANK TRANSACTIONS" that purports to show infringement by BB&T of four of Maxim's patents, and the other entitled "Analysis of BB&T Mobile Banking Software Application" that purports to analyze operation of BB&T's mobile banking application.

15. The December 22, 2011 letter further demanded payments from BB&T. Specifically, the letter stated: "Maxim is offering licensing terms at a substantial discount relative to the value of these patents in order to avoid a litigious or drawn-out resolution. . . . If I do not hear from BB&T Bank within the one month period, Maxim will assume that BB&T Bank does not want to obtain a license in a non-litigious manner and will act accordingly. Once this deadline has passed, BB&T Bank should also expect the offered royalty payments to dramatically increase."

16. Maxim's December 22, 2011 letter and attached documentation, which set forth a one month deadline to respond, was a clear and unmistakable threat of litigation against BB&T.

17. On or about May 11, 2012, Maxim sent a second demand letter to BB&T. Specifically, that letter stated: "BB&T has failed to acknowledge Maxim's letter and documentation. Please contact me so that I can provide you additional information about Maxim's licensing program and discounted, non-litigious royalty structure."

18. Maxim's May 11, 2012 letter is a further clear and unmistakable threat of litigation against BB&T.

19. In its December 22, 2011 and May 11, 2012 letters, Maxim specifically alleged that BB&T is infringing U.S. Patents No. 5,940,510 (the "'510 patent"), No. 5,949,880 (the "'880 patent"), No. 6,105,013 (the "'013 patent"), and No. 6,237,095 (the "'095 patent") (collectively, the "Asserted Patents").

20. Upon information and belief, Maxim is the assignee of the Asserted Patents. True and correct copies of the Asserted Patents are attached as Exhibits D-G. True and correct copies of assignment records for the Asserted Patents from the website of the U.S. Patent and Trademark Office are attached as Exhibit H.

21. Following its May 11, 2012 letter, Maxim further requested that BB&T acknowledge Maxim's letters and documentation. In e-mail correspondence, dated May 21, 2012, Maxim requested an in-person meeting between representatives of BB&T and Maxim's litigation counsel and Chief IP Counsel to discuss the patents described in Maxim's letters and "specific details on Maxim's licensing program." This May 21, 2012 correspondence is a further clear and unmistakable threat of litigation against BB&T.

22. Maxim has systematically threatened and/or initiated lawsuits against multiple, different entities alleging infringement of the claims of the '510, '880, '013, and '095 patents, including allegations of infringement against banking entities based on mobile banking applications. Currently, Maxim is involved in at least seventeen (17) separate lawsuits filed since January 6, 2012 alleging patent infringement, including allegations of infringement of the Asserted Patents. Since January 6, 2012, Maxim has filed ten such lawsuits in the United States District Court for the Eastern District of Texas alone.

23. On February 23, 2012, Maxim filed a motion with the U.S. Judicial Panel on Multidistrict Litigation (the "MDL Panel") seeking transfer and consolidation of all pending

actions involving the Asserted Patents to the Eastern District of Texas. *See* Mot. Transfer (D.I. 1), In Re: Maxim Integrated Products, Inc. Patent Litigation, No. 2354 (MDL Feb. 23, 2012).

24. On June 11, 2012, the MDL Panel issued a Corrected Transfer Order (D.I. 101) that directed centralization of fourteen (14) Maxim lawsuits, across five judicial districts, in the Western District of Pennsylvania for consolidated pretrial proceedings before Judge Nora Barry Fischer. That same day, the MDL Panel issued a Conditional Transfer Order (D.I. 99) that directed that three additional lawsuits involving Maxim's allegations of patent infringement also be centralized in the Western District of Pennsylvania.

25. Maxim's clear and unmistakable threats against BB&T, as well as numerous threats and lawsuits alleging infringement of the Asserted Patents against other entities, including banking entities having mobile banking applications, demonstrate that Maxim intends to pursue litigation against BB&T. Accordingly, there is an actual, substantial, and immediate controversy between BB&T and Maxim regarding infringement and validity of the Asserted Patents.

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment that the Asserted Patents are Not Infringed)**

26. BB&T restates and incorporates by reference all foregoing paragraphs.

27. BB&T is not infringing and has not infringed, directly, jointly contributorily, or by inducement, any valid claim of the Asserted Patents, either literally or under the doctrine of equivalents, willfully or otherwise.

28. An actual, substantial, and immediate controversy exists between BB&T and Maxim as to whether BB&T infringes or has infringed any claims of the Asserted Patents for at least the reason that Maxim has made clear and unmistakable threats against BB&T, and initiated

numerous lawsuits against other banking entities having mobile banking applications, alleging infringement of the Asserted Patents.

29. BB&T is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and an order that BB&T does not infringe, and has not infringed, any valid claim of the Asserted Patents.

30. This is an exceptional case entitling BB&T to an award of attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment that the Asserted Patents are Invalid)

31. BB&T restates and incorporates by reference all foregoing paragraphs.

32. The claims of each of the Asserted Patents are invalid for failure to meet the conditions and requirements for patentability as set forth, *inter alia*, in 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112 and/or 133, improper inventorship and/or noncompliance under §§ 115 and/or 116.

33. An actual, substantial, and immediate controversy exists between BB&T and Maxim as to whether any claim of the Asserted Patents is valid for at least the reason that Maxim has made clear and unmistakable threats against BB&T, and initiated numerous lawsuits against other banking entities having mobile banking applications, alleging infringement of the Asserted Patents.

34. BB&T is entitled to a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and an order that each and every claim of the Asserted Patents is invalid.

35. This is an exceptional case entitling BB&T to an award of attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## JURY TRIAL DEMAND

BB&T respectfully demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, BB&T respectfully requests that the Court enter judgment in its favor and against Maxim as follows:

1. Declaring that BB&T does not infringe, and has not infringed, any valid claim of the Asserted Patents, either directly or indirectly;

2. Declaring that each and every claim of the Asserted Patents is invalid;

3. Declaring this action exceptional pursuant to 35 U.S.C. § 285;

4. Enjoining Maxim and/or any of its successors and attorneys, and all persons in active concert or participation with any of them, from directly or indirectly asserting infringement or instituting any action for infringement of the Asserted Patents against BB&T, its parent or any of its customers, end-users, agents, suppliers, contractors, consultants, successors, and assigns;

5. Awarding BB&T its costs, expenses, and attorneys' fees in this action; and

6. Awarding BB&T such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: June 18, 2012            By:/s/*Robert C. Van Arnam*

Robert C. Van Arnam
N.C. State Bar No. 28838
Williams Mullen
301 Fayetteville Street, Suite 1700
Raleigh, NC  27601
(919).981-4000
(919) 981-4300
rvanarnam@williamsmullen.com

**Of Counsel:**

James R. Myers
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
 (202) 508-4600
Fax 202-508-4650
james.myers@ropesgray.com

Leslie M. Spencer
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9000
Fax (212) 596-9090
leslie.spencer@ropesgray.com
***ATTORNEYS FOR PLAINTIFF
BB&T CORPORATION***